IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RICHARD Q. GUNN,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS GORDON et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:13-CV-659-DN<br><br>District Court Judge David Nuffer |

Plaintiff/inmate, Richard Q. Gunn, argues that Defendant, Utah State Prison (USP) Lt. Dennis Gordon, violated his right against cruel and unusual punishment. Specifically, he asserts that Defendant used excessive force and injured Plaintiff when handcuffing him. Defendant's Motion for Summary Judgment is based on Plaintiff's alleged failure to exhaust his administrative remedies. The motion is supported by documents filed with Defendant's *Martinez* report including USP's grievance policy and copies of Plaintiff's grievances regarding his injuries allegedly stemming from Defendant's use of excessive force. After thoroughly considering all relevant pleadings and documents, the motion is granted.

## ANALYSIS

### I.   Summary-Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Factual assertions may be supported by

> citing to parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at 56(c)(1). A primary purpose of the summary-judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.*

Rule 56 requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

## II. Statement Of Undisputed Facts[1]

• On November 17, 2010, Defendant approached Plaintiff to apply handcuffs and a side restraint so he could escort Plaintiff to a classroom. (Gordon Decl. ¶¶ 11-13.)

• As a result of their physical interaction, Plaintiff's shoulder was reinjured. (*Id*. ¶¶ 17-22; Gunn Grievance 9908-83-559 (Aug. 6, 2012).)

• USP's "Inmate Grievance Procedure" requires inmates to complete a three-level process to seek a remedy for a "grievable incident." (State of Utah Dep't of Corrs. Institutional Operations Division Manual FD02/03.00 (Revised Dec. 20, 2011).

• A Level One grievance must be filed "[w]ithin seven working days of an incident or seven working days from the time the inmate knew or should have known about a grievable incident." (*Id*. 03.01A.)

• "If the Level One (Informal) attempt to resolve the grievance fails, the inmate shall have five working days to" file a Level Two grievance. (*Id*. 03.01C.)

• "Inmates not satisfied with the [Level Two] decision have five working days to appeal the decision to [Level Three] . . . ." (*Id*. 03.02B.)

• "There is no further administrative appeal from [Level Three]. The Level Three decision is final." (*Id*. 03.03B.)

• The following excerpt describes Plaintiff's first grievance involving the November 17, 2010 interaction:

> On April 18, 2011, [Plaintiff] filed Grievance No. 990879354, alleging that he was injured by [Defendant] and requested that criminal charges be pursued against [Defendant] for criminal endangerment. [Plaintiff] also requested an MRI on his shoulder, an apology from [Defendant], and that an ADA

---
[1]Assumed for purposes of this Order only.

investigation be opened to review [Defendant's] treatment towards him as a 'disabled' person.

(Defendant's Summary Judgment Motion, at pp. 5); (Plaintiff's Opp. To Defendant's Summary Judgment Motion, p. xi. (stating quoted language is "undisputed").) The grievance was denied at Level One, and Plaintiff followed up with a Level Two grievance. The Level Two response by Inmate Grievance Coordinator Billie Casper stated:

> I have reviewed your grievance. You allege the original rotator cuff tears you suffered in your shoulders were caused when Lieutenant Gordon yanked on your arm(s) on November 17, 2010. You request all medical co-pays for medical visits, prescriptions, outside consultations and surgery be borne by the Department, an investigation of the November 17, 2010, incident, compensation of $247,000.00 for the alleged injuries with damages to be assessed after repair of your left shoulder, a copy of this grievance sent to Director Turley, and no retaliation for this grievance and the lawsuit to come.
>
> A review of your medical records show you suffered from rotator cuff tears long before November 17, 2010. I find no evidence that your arm(s) were yanked by Lt. Gordon or that the incident on November 17, 2010, injured your shoulder or shoulders worse than they were prior to November 17, 2010.
>
> Your request for no retaliation is resolved. Your remaining requests are denied.
>
> You may appeal the Level 2 decision by following the procedure outlined in FDr 02/03.04.

(USP Level 2 Response to Grievance 990879354.) "In response to the Level II grievance denial, **[Plaintiff] did not file a Level III grievance**, and therefore did not exhaust his administrative remedy in relation to this issue." (Defendant's Summary Judgment Motion, at p. 6.) (emphasis in

original); (Plaintiff's Opp. To Defendant's Summary Judgment Motion, p. xi. (stating quoted language is "undisputed").)

• The following excerpt describes Plaintiff's second grievance involving the November 17, 2010 interaction:

> On March 28, 2012, . . . [Plaintiff] filed Level I Grievance Report No. 990882324 alleging that he had been injured by [Defendant] while being cuffed at his cell door and requested that the USP arrange for a second opinion by an independent doctor, that a second surgery be performed to repair his shoulder, and that an outside mediator assist him.

(Defendant's Summary Judgment Motion, at p. 4); (Plaintiff's Opp. To Defendant's Summary Judgment Motion, p. ix. (stating quoted language is "not dispute[d]").) After denial of this Level One grievance, Plaintiff filed at Level Two, which was also denied. "In response to the Level II grievance denial, [Plaintiff] **did not file a Level III grievance**, and therefore did not exhaust his administrative remedy in relation to this issue." (Defendant's Summary Judgment Motion, at p. 5) (emphasis in original); (Plaintiff's Opp. To Defendant's Summary Judgment Motion, p. xi (stating quoted language is "undisputed").)

• Plaintiff later completed a single three-level grievance process related to his shoulder problems. This began with a Level One grievance filed on August 6, 2012. (Gunn Grievance 990883559.) The first section of the Level One "Inmate Grievance Form" requires the inmate to state the "[s]pecific nature of grievances (who, what, when, where and how)." Plaintiff responded,

> A few days back I went to the UMC for sho[u]lder surgery. Today I was informe[]d that I would be charged ten percent of all charges that are related to the surgery. I should not be held responsible for these charges for the following reasons.
> Back in Feb. 2010 my initial injury was caused by me following the orders of a Utah DOC officer. . . . Surgery was finally done some seven months la[]ter. Then on Nov. 17, 2010,

> only two months after surgery, I was ordered to the section door, to
> be restrained in waist chains, for transportation to physical therapy
> on my sho[u]lders.

(*Id.*) The second section of the Level One form requires the inmate to "[i]dentify those contacted regarding your grievance and state what YOU HAVE DONE to resolve the issue." Plaintiff responded: "Wrote letters to Dr. Garden and co-pay and accounting (both injur[ies] were caused by U.D.C.staff) So U.D.C. is respon[s]ible for the bills." The third section of the Level One form asks, "What is the specific remedy you seek?" To which Plaintiff answered, "To have all costs for both surger[ies] to be paid in full by the U.D.C. i.e. ICR charges, visit charges, medication charges, medical equipment supply charges, and any out-side charges." On the Page Two "Supplemental Grievance Page," which was continued onto Page Three, Plaintiff detailed his interaction with Defendant that allegedly resulted in his shoulder reinjury. He finishes his grievance with the words, "The cause of this sho[u]lder surgery is no doubt caused by the excessive force from Lt. Gordon. . . . No doubt the first injury was caused by following U.D.C. staff orders."

### III. The Grievance Process For Plaintiff's Injuries Has Not Been Exhausted

"No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (2017) (Prisoner Litigation Reform Act (PLRA)). The United States Supreme Court has "often observed, that language is 'mandatory,'" meaning "a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856

(2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). PLRA prevents courts "from deciding that exhaustion would be unjust or inappropriate in a given case." *Id.* at 1858.

To properly exhaust a claim, a prisoner must comply with "deadlines and other procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the courses of its proceedings." *Woodford*, 548 U.S. at 90-91. Indeed, "it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, "an inmate may only exhaust by properly following all of the steps laid out in the prison's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citation omitted). This means that "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." *Id.* (citation omitted). "Substantial compliance with a grievance procedure is insufficient to satisfy the exhaustion requirement." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Here, the grievance policy sets forth three levels to be completed for exhaustion to take place. However, Plaintiff did not take his first two grievances to Level Three. His third grievance filed August 6, 2012, was taken to Level Three and thus exhausted. The issue presented on this motion is what was exhausted by this grievance, the only grievance to pass through all administrative levels. Plaintiff argues that this process exhausted his excessive force claim against Defendant. But Defendant argues that Plaintiff exhausted a claim for USP to cover his copayments and bill for his medical treatment.

Defendant is correct. First, the language of the grievance naturally leads to that interpretation. Plaintiff says, "Today I was informe[]d that I would be charged ten percent of all charges that are related to the surgery. I should not be held responsible for these charges for the following reasons." The "reasons" were that he viewed his injuries as being caused by USP

personnel--the first time he hurt his shoulder, it was allegedly due to him putting himself in harm's way at the command of USP personnel; the second time, it was allegedly due to Defendant using excessive force. References to these two incidents simply explain why he thinks USP should pay for his surgical charges. This is bolstered by Plaintiff's other responses to the grievance-form questions: When asked what he has done himself to seek a remedy, he says, "Wrote letters to Dr. Garden and co-pay and accounting (both injur[ies] were caused by U.D.C.staff) So U.D.C. is respon[s]ible for the bills." When asked what specific remedy he seeks, he says, "To have all costs for both surger[ies] to be paid in full by the U.D.C. i.e. ICR charges, visit charges, medication charges, medical equipment supply charges, and any out-side charges." The thrust of the entire grievance is that Plaintiff wants his medical bills covered by USP. While the bills arise out of injuries, he does not see redress for injuries. It requires some machination to look at the grievance subject matter as directly asking for a remedy for the excessive-force allegation from almost a year and a half prior.

Second, that this grievance addresses payment of medical bills is consistent with the time the grievance was made. "*Today* I was informe[]d that I would be charged ten percent of all charges that are related to the surgery. I should not be held responsible for these charges for the following reasons." (Emphasis added.) What prompted the grievance on the day it was filed was that Plaintiff was told he would have to pay toward his medical bills for shoulder treatment. The impetus for the grievance was not the past excessive-force allegation, but the news of his required payments. The grievance's timing is related to the issue of who would pay the medical bills, not to the past excessive-force allegation.

Third, this interpretation is in keeping with Plaintiff's behavior from the time of the alleged excessive force. He had started the grievance process about the excessive force and

medical treatment on two separate and earlier occasions. He carried neither of those two other grievances to finality, but, obviously, he recognized (a) that grievance triggers had occurred and (b) the mechanics of the grievance policy. He was further notified about grievance timing in at least one of the earlier prison responses.

Finally, the timing policies underlying the exhaustion requirements support the conclusion that Plaintiff's grievance should not be viewed as keeping the alleged excessive-force claim alive. PLRA mandates observance of USP's policy timeline which requires that a Level One grievance must be filed within seven working days of the grieved incident. The grievance for the alleged excessive force incident would thus have been due by November 24, 2010. The third grievance was not timely for the excessive force incident but was timely for medical bills that Plaintiff had been told that very day he needed to pay.

The way Plaintiff urges the Court to read his grievance effort turns PLRA policy on its head. The Supreme Court recognizes that "exhaustion requirements are designed to deal with parties who do not want to exhaust." *Woodford*, 548 U.S. at 90. Plaintiff would like to continue to tie any future shoulder pain to the excessive-force allegation. But under his view on exhaustion, all he would have to do to keep the allegation alive for a federal civil-rights lawsuit would be to throw an old grievance in to any future grievance. Exhaustion would be a moving and flexible target. This would not honor PLRA's commitment to honoring timelines and keeping claims fresh. As the Supreme Court stated,

> [P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while

memories are still fresh, and evidence can be gathered and preserved.

*Woodford*, 548 U.S. at 90, 94-95.

## CONCLUSION

Plaintiff did not properly exhaust his claim of excessive force against Defendant.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.** (*See* Docket Entry # 98.).

DATED this 10th day of October, 2017.

BY THE COURT:

CHIEF JUDGE DAVID NUFFER
United States District Court